- Exhibit 5 -

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | |
|---|---|
| TOBY HOY <br> *Plaintiff* <br> v. <br> HI.Q, INC. d/b/a HEALTH IQ <br> *Defendant* | Civil Action No. 4:21-cv-04875-YGR |

### SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:    ZEETOGROUP, LLC

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See the attached Schedule A.

| Place: Magna Legal Services via remote means | Date and Time: 1/24/2022 9:00 AM PST |
|---|---|

The deposition will be recorded by this method:    Videographer and/or Stenographer

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See the attached Schedule B.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 1/09/2022

| *CLERK OF COURT* | |
|---|---|
| | OR |
| _____ <br> *Signature of Clerk or Deputy Clerk* | /s/ Anthony I. Paronich <br> *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Plaintiffs, who issues or requests this subpoena, are:

Paronich Law, P.C., 350 Lincoln Street, Suite 2400, Hingham, MA 02043, anthony@paronichlaw.com, (617) 485-0018

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Exhibit 5 - Page 25

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
       **(i)** is a party or a party's officer; or
       **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
       **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
       **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
       **(i)** fails to allow a reasonable time to comply;
       **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
       **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
       **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

       **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
       **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
       **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
       **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
       **(i)** expressly make the claim; and
       **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

Exhibit 5 - Page 26

## DEPOSITION TOPICS SCHEDULE A

Unless otherwise indicated, the RELEVANT TIME PERIOD for the purposes of this Notice of Deposition is from four years prior to the filing of the Complaint in this matter to the present.

As used throughout this Notice of Deposition, the following terms have the following indicated meanings:

1.  The term "DOCUMENT" or "DOCUMENTS" as used herein shall refer to all writings as defined in Fed. R. Civ. P. 34(a)(1)(A), however produced or reproduced or archived or stored, within YOUR possession or subject to YOUR control, of which YOU have knowledge or to which YOU now have or previously had access, including all ELECTRONICALLY STORED INFORMATION.

2.  "ELECTRONICALLY STORED INFORMATION" ("ESI") as used herein means any electronic DOCUMENT or WRITTEN COMMUNICATION and includes, without limitation, the following:

    a.  Activity listings of electronic mail receipts and/or transmittals;

    b.  Output resulting from the use of any software program, including without limitation word processing DOCUMENTS, spreadsheets, DATABASE files, charts, graphs and outlines, electronic mail, text messages, AOL Instant Messenger (or similar program) or bulletin board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether such electronic data exist in an active file, deleted file, or file fragment; and

    c.  Any and all items stored on computer memories, hard disks, network servers, individual computer workstations or clients, thumb drives, jump drives, CDs, DVDs, cloud servers, floppy disks, CD-ROM, magnetic tape, microfiche, or on any other vehicle for digital

Exhibit 5 - Page 27

data storage and/or transmittal, including without limitation a personal digital assistant, smartphone and/or tablet, e.g., iPhone, Droid, Blackberry, Galaxy, HTC, iPad, iPod, Kindle, Nook or other device. PLAINTIFF requests that ESI be processed and produced in a manner that preserves all metadata and that the parties confer regarding the production of metadata and the form or any electronic production prior to the gathering or processing of ESI.

3. "DATABASE" or "DATABASES" includes any collection of data defined so that it can be reorganized and accessed in a number of different ways; any collection of data for one or more purposes, usually in digital form; a comprehensive collection of related data organized for convenient access, generally in a computer; a collection of information that is organized so that it can easily be accessed, managed, and updated; or a structured set of data held in a computer

4. "POLICY" or "POLICIES" means any instruction(s), practice, procedure, directive, routine, guideline, rule, course of conduct or code of conduct, written or unwritten, formal or informal, recorded or unrecorded, which were or have been recognized, adopted, issued or followed by YOU.

5. "HEALTH IQ" means defendant HI.Q, INC. d/b/a HEALTH IQ, as well as any of its divisions, affiliates, subsidiaries, successors, predecessors, present or former partners, officers, directors, employees, agents, attorneys or representatives.

6. "CEGE MEDIA" means the company you interact with regarding www.GET IT FREE.us, as well as any of its divisions, affiliates, subsidiaries, successors, predecessors, present or former partners, officers, directors, employees, agents, attorneys or representatives.

7. "PLAINTIFF" means the Plaintiff in this action.

8. "PERSON" or "PERSONS" means any individual, partnership, association, corporation, joint venture, governmental or administrative body, or other business or legal entities.

9. "THIRD PARTY" or "THIRD PARTIES" or "OTHER PARTY" means any individual, partnership, association, corporation, joint venture, or other business or legal entity

not owned or controlled by YOU, or any PERSON that does not receive an annual salary from YOU, including but not limited to affiliates, agents, and subsidiaries of YOU.

10. "VENDOR" or "VENDORS" is a subset of THIRD PARTY and when used in this deposition notice means any THIRD PARTY under contract with, hired by, employed by, paid by, or working for YOU for purposes of telemarketing activities or services, including, but not limited to, generating leads, warm transfers, hot transfers, any other call transfers, making outbound calls, and the tracking or aggregation of data related to same. VENDORS specifically includes, but is not limited to, the entity that provided the PLAINTIFF's lead or called the PLAINTIFF.

11. Topics that include the creation (including any sources of information or ESI), modification, use, ARCHITECTURE, and FUNCTIONALITY of any and all DATABASES include, but are not limited to, the following subtopics:

   a. The name of the system, its version, and platform on which it runs;
   b. Whether the systems store information on premises or on the cloud or a hybrid;
   c. The custodian of the data (CEGE, or any VENDOR or THIRD PARTY);
   d. The data used with each system;
   e. How stored data is accessed;
   f. Whether the systems archive information;
   g. Where the archives are stored;
   h. How data is archived;
   i. What reporting or analytics features do the systems have;
   j. What export features do the products have;
   k. What data fields do the products maintain; and
   l. Who is responsible for maintaining the systems.

12. All other words shall have their ordinary definition as defined by Merriam-Webster's online dictionary, located at http://www.merriam-webster.com/.

## **TOPICS**

GET IT FREE.US is hereby directed to designate one or more officers, directors, managing agents, or other PERSONS to testify regarding the following topics:

**GET IT FREE Business Structure**

1. The general nature and scope of GET IT FREE'S business and/or services. This subject includes, but is not limited to, GET IT FREE'S business activities, daily operations, portfolio of services offered, and business model.

**LEAD GENERATION**

2. GET IT FREE'S process for obtaining telephone numbers that were sold to CEGE MEDIA or HEALTH IQ, including where such telephone numbers came from, who acquired them, how they were delivered and any audits or vetting done on them before they were delivered.

3. GET IT FREE's knowledge of and participation in the process of receiving and obtaining telephone numbers made by THIRD PARTIES it works with, including, but not limited to, CEGE MEDIA or HEALTH IQ.

**RELATIONSHIP WITH CEGE MEDIA**

4. GET IT FREE's relationship or involvement with CEGE MEDIA, including, but not limited to:

    a. The nature and scope of services provided by GET IT FREE to CEGE MEDIA and vice versa;

    b. The negotiation, drafting, implementation, and all other aspects of any agreement or scope of work between GET IT FREE and CEGE MEDIA;

  c. The day-to-day relationship between GET IT FREE and CEGE MEDIA, including, but not limited to, the identities of any GET IT FREE employees who communicate with CEGE MEDIA regarding lead generation, the identities of employees of CEGE MEDIA with whom GET IT FREE communicates regarding lead generation, the frequency of any meetings with GET IT FREE regarding lead generation, and the typical content and form of any communications between GET IT FREE and CEGE MEDIA;

  d. Any training CEGE MEDIA provided to GET IT FREE related to lead generation;

  e. GET IT FREE'S disclosure to CEGE MEDIA regarding the method, manner, and means by which GET IT FREE promoted HEALTH IQ through lead generation;

  f. The scope of any access that CEGE MEDIA has to any GET IT FREE computer systems, equipment, or DATABASES used for purposes of lead generation; the type of such computer systems, equipment, or DATABASES to which CEGE MEDIA has access; and the method, manner, and means by which CEGE MEDIA accesses such computer systems, equipment, or DATABASES; and

  g. Any financial incentives provided by or payments made by CEGE MEDIA to GET IT FREE.

5. All audits, investigations, inquiries, or studies (collectively "audits") performed by CEGE MEDIA related to lead generation, including, but not limited to, when each audit was performed, who performed each audit, why each audit was performed, which PERSONS were audited (YOU, THIRD PARTIES, or VENDORS), why each PERSON was audited, and the results of each audit.

**RELATIONSHIP WITH HEALTH IQ**

    6.    All aspects of HEALTH IQ'S relationship or involvement with GET IT FREE, including, but not limited to:

    a.    The nature and scope of services provided by GET IT FREE to HEALTH IQ;

    b.    The negotiation, drafting, implementation, and all other aspects of any agreement or scope of work between HEALTH IQ and Get it Free;

    c.    The day-to-day relationship between HEALTH IQ and GET IT FREE, including, but not limited to, the identities of any HEALTH IQ employees who communicate with Get it Free regarding lead generation, the identities of employees of GET IT FREE with whom HEALTH IQ communicates regarding lead generation, the frequency of any meetings with GET IT FREE regarding lead generation, and the typical content and form of any communications between HEALTH IQ and GET IT FREE;

    d.    Any training HEALTH IQ provided to Get it Free related to lead generation;

    e.    HEALTH IQ'S knowledge of the other third parties that GET IT FREE contracted with for purposes of marketing HEALTH IQ'S products or services;

    f.    HEALTH IQ'S knowledge of the method, manner, and means by which GET IT FREE acquired leads or prospective customers for HEALTH IQ;

    g.    The scope of HEALTH IQ'S knowledge or participation in providing leads to GET IT FREE for purposes of lead generation;

    h.    The scope of any access that GET IT FREE has to any HEALTH IQ computer systems, equipment, or DATABASES used for purposes of lead generation; the type of such computer systems, equipment, or DATABASES to which GET IT FREE has access; and the method, manner, and means by which GET IT FREE accesses such computer systems, equipment, or DATABASES; and

          i.        Any financial incentives provided by or payments made by HEALTH IQ to GET IT FREE.

7. All audits, investigations, inquiries, or studies (collectively "audits") performed by YOU or for YOU related to lead generation, including, but not limited to, when each audit was performed, who performed each audit, why each audit was performed, which PERSONS were audited (YOU, THIRD PARTIES, or VENDORS), why each PERSON was audited, and the results of each audit.

**POLICIES**

8. GET IT FREE'S POLICIES relating to lead generation, including any POLICIES regulating actions by THIRD PARTIES that conduct lead generation for GET IT FREE.

9. GET IT FREE'S POLICIES, practices, and procedures relating to the Telephone Consumer Protection Act, 47 U.S.C. § 227, including, but not limited to, the rules, regulations, opinions, advisories, comments, or filings of the Federal Communications Commission that relate to 47 U.S.C. § 227 and 47 C.F.R. § 64.1200(c)(2) & (d).

10. GET IT FREE'S efforts to ensure TCPA compliance by THIRD PARTIES and VENDORS that conduct lead generation for GET IT FREE, and its own employees (*e.g.*, requiring compliance training, audits, procedures to ensure appropriate consent).

**COMPLAINTS & DO NOT CALL REQUESTS**

11. Any complaints, grievances, investigations, or actual or threatened litigation from private individuals, business bureaus (such as the BBB), and government entities regarding lead generation relating to GET IT FREE, and any corresponding response or investigation.

12. GET IT FREE'S POLICIES for responding to complaints, including GET IT FREE'S intake, investigation, and tracking of complaints, and its development and

implementation of those POLICIES.  All DATABASES or computer software programs GET IT FREE uses to track complaints.

**THIS LITIGATION**

13. GET IT FREE'S response to the two subpoenas it has received.

14. GET IT FREE'S investigation into the lead(s) it provided related to the PLAINTIFF.

15. GET IT FREE's investigation and any communications regarding this litigation with the VENDOR or THIRD PARTY that contacted the PLAINTIFF.

8

Exhibit 5 - Page 34

## SCHEDULE A

### INSTRUCTIONS

1. You are required to search not only for hard copy documents, but for electronically generated, maintained or stored information, including data that exist on your computers' hard drives, on computer servers to which you have access, in email accounts, in text messaging accounts, and all other places in which responsive electronic data may be stored.

2. Where possible, all electronically generated, maintained or stored information should be produced in its native format and in a format compatible to litigation-support databases and review systems. Where possible, such documents should contain searchable text and searchable metadata in a load file format. File fidelity and resolution should not be downgraded; for instance, electronic files should not be printed and then scanned.

### DEFINITIONS

1. When used in these Requests, "Defendant" means HI.Q, Inc. d/b/a Health IQ, including any subsidiaries or affiliated enterprises, and its officers, directors and employees.

2. When used in these Requests, "you" or "your" (or synonyms thereof) means ZeetoGroup, LLC, including any subsidiaries or affiliated enterprises, and its officers, directors and employees. This includes, but is not limited to, Getitfree.us, and other websites owned by ZeetoGroup.

3. "CEGE" means Enfuego Holdings LLC d/b/a Cege Media LLC, including any subsidiaries or affiliated enterprises, and its officers, directors and employees.

4. Unless otherwise instructed, the requests are seeking documents from January 1, 2018 to the present.

336354

Exhibit 5 - Page 35

**REQUESTS**

**Request No. 1:** To the extent you claim that your company obtained permission for automated calls or text messages concerning Defendant, produce all documents that identify:

    A.    Any signed writings evidencing that permission;

    B.    As it relates to any website visits that you assert are being used in place of signed writings:

        i.    All documents that evidence a clear and conspicuous statement that informed consumers of their right to withdraw their consent to receive telemarketing calls;

        ii.    All documents that evidence a clear and conspicuous statement that informed consumers of the procedures they must use to withdraw consent, and the procedures they may use to update their contact information that was used as a basis for any alleged consent to make telemarketing calls to them.

**Request No. 2:** To the extent you claim that your company obtained permission for automated calls or text messages concerning Defendant via websites:

    A.    Produce documents that identify those website(s) and the specific page(s) on those website(s) that you claim constitute consent or permission.

    B.    For any website identified in response to the prior request, produce all access, server and error logs and security and fraud alerts during the period you claim visits to that website constituted consent or permission to contact any putative class member with telemarketing calls.

  C. For any website identified in response to the prior request, produce all architectural diagrams, wireframes and application mockups.

  D. Produce all documents that identify the affiliate(s) compensated directly or indirectly by you for each purportedly consenting consumer.

  E. Produce all documents that identify the referring URL from which each purportedly consenting consumer came to your website.

  F. If any documents responsive to the requests in this Schedule A are in the hands of third parties, produce documents that identify those third parties

 **Request No. 3:** All contracts or documents representing agreements with third parties, including subcontractors or affiliate companies, utilized to perform services for the Defendant or CEGE. This includes, but is not limited to, any affiliates that generate traffic at any of your websites.

 **Request No. 4:** All internal correspondence regarding the Defendant or CEGE and the process of making calls, selling leads or selling telephone numbers to them or for them.

 **Request No. 5:** All images, proof and other website architecture that demonstrates that the Defendant's name or any of their registered DBAs appeared on the websites for your company. This includes, but is not limited to, the following websites:

  try.getitfree-samples.com
  try.getitfreesamples.net
  try.getitfree.us
  try.get-itfree-samples.com
  try.getitfree-sample.com
  try.getyourfree-samples.com
  try.get-thefree-samples.com
  try.getyourfreesamplesnow.com
  try.getyourfreesampletoday.com
  try.getitfreesample.com

        try.getyourfree-sample.com
        try.getitfreessamples.com
        try.get-yourfree-sample.com
        try.get-it-freesample.com
        try.get-it-freesamples.com
        try.get-your-freesamples.com
        try.getitfree-samples-today.com
        try.evenmoresamples.com
        try.get-itfree-sample.com
        try.getitfreesamples-now.com
        try.get-your-free-samples-now.com
        try.get-it-free-sample.net
        try.getitfree-sample-today.com
        try.getitfreesamplestoday.com
        try.get-your-free-samples.com
        try.get-it-free-samplestoday.com
        try.getitfree-samples-now.com

**Request No. 6:** Communications with any third party concerning the litigation captioned on the subpoena.

Exhibit 5 - Page 38