Christopher S. Morris, Esq., SBN 163188
cmorris@morrislawfirmapc.com
Jacob A. Gillick, Esq. 312336
jgillick@morrislawfirmapc.com
MORRIS LAW FIRM, APC
501 West Broadway, Suite 1480
San Diego, CA 92101
Telephone: (619) 826-8060
Facsimile: (619) 826-8065

Attorneys for Respondent Zeetogroup, LLC,

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOBY HOY,<br><br>                Petitioner,<br><br>v.<br><br>ZEETOGROUP, LLC,<br><br>                Respondent. | Case No. 22cv151-LL-MDD<br><br>**OPPOSITION TO MOTION TO COMPEL COMPLIANCE WITH OUT-OF-DISTRICT SUBPOENA TO NON-PARTY ZEETOGROUP, LLC** |

# I.
# **<u>INTRODUCTION</u>**

Petitioner and Plaintiff Toby Hoy's ("Petitioner" or "Mr. Hoy") Motion to Compel an Out-of-District Subpoena is moot, deficient, and purposefully leaves out relevant information. At the outset, Mr. Hoy's representation that "Get it Free has refused to produce a single document and has refused to produce a witness for a deposition on any topic" is untrue. On March 10, 2022, third party Respondent ZeetoGroup, LLC ("Zeeto" or "Respondent") produced "video" proving that consumers opted in to having their information shared with Zeeto's customer, Policyscout, whom Defendant Health IQ contracted with. Zeeto also produced a declaration before requesting the parties discuss the production before moving forward with motion practice. Mr. Hoy refused without explanation.

The production by Zeeto proves that Policyscout hired Zeeto to run a campaign whereby Zeeto connected consumers with Policyscout through a "free sample" offer. As seen by the Jornaya reports, upon entering their phone numbers, consumers were informed that the information would be shared with companies like Policyscout. Zeeto was never made privy to what was done with the leads after that. Nonetheless, Plaintiff complains that he did not consent to being contacted by Health IQ (who acquired contact information from Policyscout) and now seeks documents from Zeeto to prove "lack of consent." Zeeto has done what it can, but Policyscout and Health IQ are the proper parties to be seeking discovery from.

Petitioner fails to discuss each individual request in its motion because it is seeking a complete document dump from a third-party which would cost hundreds of man hours without producing anything of value. Zeeto has provided what it can and requested further discussions with Petitioner on what else could be disclosed. Petitioner refused to discuss the production. Based on the subpoena being rendered moot by the March 10, 2022, production, and Petitioner's failure to sufficiently compel documents—Respondent Zeeto requests the Motion be denied.

## II.
## **Petitioner's Motion is Procedurally Insufficient**

"The motion must include a certification that the movant has in good faith conferred or attempted to confer." Fed. R. Civ. Proc., R. 37(a)(1). As discussed below, Zeeto disclosed multiple documents on March 10, 2022. Gillick Decl., Exhibit 11. Instead of discussing the production or what else may be discoverable, Petitioner decided to move forward with the motion without meeting and conferring. *Id.* at Exhibit 10. Zeeto contends that the March 10, 2022, production, combined with Petitioner's failure to meet and confer in good-faith renders the motion deficient and therefore requests the motion be denied.

## III.
## **The Parties**

Petitioner fails to sufficiently explain the relationship between the parties in an attempt to receive a complete document dump from Zeeto—which will be unproductive and overly burdensome. It should be very clear that Defendant Health IQ is *not* a client of Zeeto. Third party Policyscout (referred to as "Cege" and "En Fuego" by Petitioner) is Zeeto's client who dealt exclusively with Health IQ. As described below, Policyscout asked Zeeto to sell samples of products in exchange for consumer's information. Zeeto was simply connecting Policyscout with consumers and has no say, nor idea, of what Policyscout did with that information.

## IV.
## **Procedural History**

Plaintiff's counsel's Declaration is woefully deficient of the facts surrounding the dispute to date. Petitioner is moving on his *fourth* nearly identical subpoena to Zeeto.

On September 7, 2021, Petitioner executed his first subpoena on Zeeto. *Id.* at Exhibit 1. On September 20, 2021, Zeeto objected. *Id.* at Exhibit 2. Petitioner did not move to compel the subpoena. On October 20, 2021, Petitioner again asked

Zeeto to accept service of a subpoena but then went "radio silent." *Id.* at Exhibit 3. On November 29, 2021, after confirming Zeeto will accept services, counsel for Mr. Hoy sent over a "Schedule A" which he attempted to pass off as a subpoena. *Id.* at Exhibits 4-5.

On December 9, 2021, Mr. Hoy executed his third subpoena. *Id.* at Exhibit 6. On December 20, 2021, Zeeto responded with the same objections. *Id.* at Exhibit 7. Again, Petitioner made no attempt to dispute the objections or compel the subpoena. On January 9, 2022, Plaintiff Hoy served his fourth subpoena on Zeeto with the same objections being asserted on January 22, 2022. *Id.* at Exhibits 8-9; Dkt. 1-10. On or around February 11, 2022, Mr. Hoy filed a motion to compel.

Despite the assertions of Mr. Hoy's counsel, at no point was a protective order sent, or even a copy of the Complaint. Nonetheless, in order to assist in resolving the dispute, Zeeto requested the identifying information of consumers in order to contact Jornaya and research the issue. Mr. Hoy's counsel inexplicably refused this request until February 15, 2022, when it sent over a list of over 24,000 numbers supposedly produced by Policyscout. *Id.* at Exhibit 9. Immediately thereafter, Zeeto contacted Jornaya.

## V.

## **Zeeto's Production**

On March 10, 2022, Zeeto produced a declaration of Shayne Cardwell along with 26 different reports from Jornaya. Gillick Decl., Exhibits 10-11. Jornaya utilizes a tool which converts code into a "visual playback" depicting what would have been seen by the consumer upon entering their information. Zeeto selected 26 different phone numbers at random to investigate given the extensive process this procedure requires, and the close deadline imposed by Petitioner who filed the motion before disclosing the phone numbers.

After reviewing the "video playback," it was uncovered that Policyscout ran the type of campaigns where they used Zeeto as a catalyst to provide free samples

to consumers in exchange for phone numbers. Zeeto has no idea what Policyscout did with the consumers information after receiving it because that was not the relationship. However, each and every "video playback" included a disclosure that the information would be shared with Zeeto's partners—which includes Policyscout. Zeeto was hired to offer free samples on behalf of Policyscout and there is nothing further Zeeto can provide without a complete dump of its entire business as described below.

After providing the reports, Zeeto requested Petitioner stipulate to an extension of the Motion to Compel but was denied without explanation. *Id.* at Exhibit 10. Even the substance of Mr. Hoy's motion fails to specifically differentiate between what has been produced, why it may be insufficient, and what other reasonable information may be produced. A detailed examination by the Court based on the motion alone would be a waste of resources as Petitioner has not addressed the production.

Petitioner failed to sufficiently meet and confer regarding Zeeto's production. Further, "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." Fed. R. Civ. Proc., Rule 45(d)(1). Those efforts have not been made here through four different subpoenas and a refusal to discuss the production. Finally, an "order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." *Id.* at (d)(2)(B)(ii). An order compelling disclosure of every vague request would be devastating to Zeeto.

/ / /

/ //

/ / /

# VI.
## **Specific Requests**

Plaintiff has requested a deposition regarding the following items:

(1) Daily operations.

(2) Portfolio services offered.

(3) Process of receiving and obtaining telephone numbers made by Third Parties it works with.

(4) All audits, investigations, inquiries, or studies performed by CEGE Media.

(5) All aspects of Health IQ's relationship or involvement with Get it Free.

(6) All audits, investigations, inquiries, or studies related to lead generation, including, but not limited to, when each audit was performed.

(7) Any complaints, grievances, investigations, or actual or threatened litigation from private individuals, BBB, and government entities regarding lead generation to Get it Free.

(8) Get it Free's policies for responding to complaints, including Get it Free's intake, investigation, and tacking of complaints, and its development and implementations of those policies.

(9) Get it Free's response to the two subpoenas it has received.

(10) Get it Free's investigation into the leads it provided related to the Plaintiff.

(11) Get it Free's investigation and any communications regarding this litigation with the vendor or third party that contacted the plaintiff.

Gillick Decl., Exhibit 9. Petitioner's counsel fails to discuss any of these topics in detail and instead focuses on broad demands for anything and everything without sufficiently connecting the requests with its claims. Zeeto is extremely concerned

that Mr. Hoy is on a "fishing expedition" and does not know exactly what he wants, but knows he wants everything, including Better Business Bureau reports for some reason and documents evidencing every single time CEGE asked Zeeto a question (inquiry). Zeeto has produced all information it has related to the Plaintiff, the class, and its relationship with Policyscout. Zeeto is happy to work out the details of what is available, reasonable, and helpful. Unfortunately, Petitioner has ignored these requests and opted to harass Zeeto with overbroad and unspecific requests.

With regards to the documents requested, Petitioner demands:

(1) To the extent you claim that your company obtained permission for automated calls or text messages concerning Defendant produce signed writings.

(2) To the extent you claim that your company obtained permission for automated calls or text messages concerning Defendant.

(3) All contracts or documents representing agreements with third parties, including subcontractors or affiliate companies, utilized to perform services for the Defendant or CEGE.

(4) All internal correspondence regarding Defendant CEGE and the process of making calls, selling leads or selling telephone numbers to them or for them.

(5) All images, proof and other website architecture that the Defendant's name or any of their registered DBAs appeared on the websites for your company.

(6) Communication with any third party concerning the litigation captions on the subpoena.

Gillick Decl., Exhibit 9. The first two requests seek responses to a "claim" which does not exist because Zeeto is not a party to the litigation. The third request seeks unfettered access to every single contract and communication with all companies Zeeto works with to run its business. The fourth request seeks documents it should

7

have sought from Policyscout but are not relevant to what consumers saw during the consent process. The fifth requests seeks the entire "architecture" of the company which again would provide no benefit and would cost hundreds of man hours to produce.  No effort has been made to explain how this is not a burdensome production.

Overall, Petitioner has failed to discuss the requests and how they will provide the benefit it contends it will without harassing Zeeto.  In the event Respondent is compelled to provide a full production, Zeeto would be disclosing third party information, trade secrets, information equally available from Policyscout or Health IQ, and spending a large amount of man hours compiling the information without any clear benefit to either party of the litigation.  Zeeto has offered further discussion but Respondent has refused—demanding all or nothing.  Therefore, Zeeto requests the Motion be denied.

## VII.
## Transfer

In the alternative to a denial of Petitioner's motion, he invites this Court to give him a second "bite at the apple" by transferring the matter to the Northern District.  If done, this would constitute the fifth time Zeeto is required to defend an overly broad subpoena.  Further, Respondent has complete faith that this Court can understand the issues and law to make a fair ruling.

Finally, "[a] motion for an order to a party must be made in the court where the action is pending.  A motion for an order to a nonparty must be made in the court where the discovery is or will be taken." Fed. R. Civ. Proc., Rule 37(a)(2). Therefore, Zeeto requests the matter not be transferred.

## VIII.
## Conclusion

As the evidence attached to the Declaration of Jacob Gillick show, there was no clear explanation on what documents, outside of a complete dump of all

company information, would assist in litigation of the case.  Further, Zeeto has produced documents responsive to the subpoena while making itself available for further discussions.  Given Petitioner's failure to sufficiently discuss each request, the production, and why further discovery should be compelled, Respondent respects Petitioner's motion be denied.

**MORRIS LAW FIRM, APC**

Dated:  March 14, 2022

 *s/ Jacob A. Gillick*
Jacob A. Gillick, Esq.
jgillick@morrislawfirmapc.com
Attorneys for Respondent Zeetogroup, LLC