Beth E. Terrell, CSB #178181
Email: bterrell@terrellmarshall.com
Attorney for Petitioner
TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603

[Additional Counsel Appear on Signature Page]

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOBY HOY, individually and on behalf all others similarly situated,<br><br>Petitioner,<br><br>v.<br><br>ZEETOGROUP, LLC,<br><br>Respondent. | Case No. 3:22-cv-00151-LL-MDD<br><br>**REPLY IN SUPPORT OF PETITIONER'S MOTION TO COMPEL COMPLIANCE WITH OUT-OF-DISTRICT SUBPOENA TO NON-PARTY ZEETOGROUP, LLC.**<br><br>JUDGE:  HON. MITCHELL D. DEMBIN<br>DATE:  TBD<br>TIME:  TBD<br>COURTROOM:  SUITE 1180 |

REPLY IN SUPPORT OF PETITIONER'S MOTION TO COMPEL COMPLIANCE WITH
OUT-OF-DISTRICT SUBPOENA TO NON-PARTY ZEETOGROUP, LLC.

## I. INTRODUCTION

On March 10, 2022, a month after Petitioner Toby Hoy filed his motion to compel, Respondent ZeetoGroup, LLC (Zeeto) produced a declaration from its Chief Revenue Officer, Shayne Cardwell, attaching twenty-six individual lead reports that Zeeto claims moot Mr. Hoy's motion and prove Health IQ was on the list of marketing partners. But Mr. Cardwell's declaration is riddled with inaccuracies and Zeeto's production of documents cannot moot a request for deposition. The twenty-six lead reports show nothing about the more than 244,000 (not 24,000) other leads that originated on Zeeto's website.

Zeeto offers a hodgepodge of additional objections to producing documents and a corporate designee, none of which have merit. First, Mr. Hoy conferred extensively with Zeeto before and after this motion was filed. And during those conferences, Zeeto declined to identify responsive documents or discuss how to efficiently produce the information Mr. Hoy needs. Second, Zeeto's burden objections are wholly unsubstantiated and entirely insufficient to preclude the discovery Mr. Hoy seeks. Finally, Zeeto's confidentiality objections provide no basis for refusing to respond to valid subpoena. The protective order in the underlying litigation will shield any confidential information from disclosure.

The Court should overrule Zeeto's objections and order it to produce responsive documents and appear at a deposition.

## II. REPLY

The underlying litigation is a proposed TCPA class action with millions of

REPLY IN SUPPORT OF PETITIONER'S MOTION TO COMPEL COMPLIANCE WITH OUT-OF-DISTRICT SUBPOENA TO NON-PARTY ZEETOGROUP, LLC - 1

1  proposed class members. Health IQ has asserted as an affirmative defense that it
2  had express or implied consent to send text messages to the class. Mr. Hoy issued
3  subpoenas to Zeeto after Health IQ and its marketing partner, Enfuego, produced
4  evidence that the lead for Mr. Hoy—and the alleged consent that accompanied
5  that lead—originated from Zeeto's websites. Neither Health IQ nor Enfuego have
6  evidence that Mr. Hoy (or any other class member whose lead originated through
7  a Zeeto website) consented to receive texts from Health IQ, as the TCPA requires.
8  The evidence establishing what class members consented to resides with Zeeto,
9  the owner of the websites where the leads originated.

10  Whether proposed class members consented to receive calls from Health
11  IQ and how that consent was obtained will be central issues in the underlying
12  litigation, both at class certification and on the merits. *See Williams v. Pillpack LLC*,
13  C19-5282, 2021 WL 535215, at *6 (W.D. Wash. Feb. 21, 2021) (finding
14  predominance satisfied because there was "little or no variation" in the method
15  of consent). And Enfuego's records show that more than <u>244,000</u> (not 24,000)
16  leads Health IQ used to text proposed class members originated from Zeeto's
17  websites. ECF No. 7 (Health IQ's Response) at 2; *see also* ECF No. 1-3 (Paronich
18  Decl.) ¶ 9. Zeeto has sole possession of information that could significantly impact
19  the claims of hundreds of thousands of proposed class members. Health IQ
20  agrees. *See* ECF No. 7 at 2 ("[Zeeto's] production confirms that ZeetoGroup has
21  unique evidence relevant to the claims and defenses at issue in the underlying
22  litigation."). A classwide production is necessary now, because the fact discovery
23  cut off is set for July 1, 2022, *Hoy v. Hi Q., Inc.*, No. 4:21-cv-04875, ECF No. 41,
24

(N.D. Cal. Jan. 26, 2022), and the court in the underlying litigation declined to bifurcate discovery. Zeeto should be ordered to fully and promptly respond to the subpoena and appear for a remote deposition.

**A.   Mr. Hoy met and conferred with Zeeto before and after the motion to compel was filed.**

Mr. Hoy met and conferred with Zeeto by telephone and in writing on multiple occasions. Zeeto made clear on February 3, 2022, that it would not produce documents or a corporate witness in response to the subpoena and was unwilling to negotiate. ECF No. 1-10 (Paronich Decl., Ex. 7) at 62–63. Even after Zeeto ended the discussion, Mr. Hoy tried to narrow the issues that would need to be addressed by motion. *Id*. at 61–62. To no avail. On February 7, Zeeto's counsel responded that he still did not see "why [this discovery] needs to come from us/cannot come from a party to the action." *Id*. at 60–61. HealthIQ's counsel answered that question clearly: "the [lead] flow information is solely in the possession of Zeeto, and may be 'dynamic' so there isn't one clear flow that we could re-create ourselves." *Id*. at 59–60. And when Zeeto did not respond, Mr. Hoy filed his motion to compel on February 11, 2022.

Zeeto's response avoids any mention of Mr. Hoy's extensive efforts to confer prior to filing his motion. Instead, Zeeto argues that Mr. Hoy's motion is deficient because he did not meet and confer regarding the documents Zeeto produced a month after his motion was filed. But Mr. Hoy *did* confer with Zeeto regarding its proposal to produce the Jornaya reports. On February 14, 2022, presumably after reviewing Mr. Hoy's motion, Zeeto offered, for the first time, to

produce what it called third party verifications for around 20 telephone numbers. Supplemental Declaration of Anthony I. Paronich (Supp. Paronich Decl.) ¶ 2; *see also* ECF No. 8-1 at 78–187 (Gillick Decl., Ex. 11). Zeeto requested that Mr. Hoy send over some telephone numbers, and on February 15, Mr. Hoy provided Zeeto with the full list of numbers attributed to Zeeto's websites. Supp. Paronich Decl. ¶ 2.

After inquiring about the details of Zeeto's proposal, Mr. Hoy rejected it. *Id*. ¶ 3. A sample of 20 third-party reports from the more than 244,000 leads that originated on Zeeto's websites is simply not sufficient. *Id*. And Zeeto's counsel declined to do more, replying that he would just respond to Mr. Hoy's motion that Zeeto had produced the sample Mr. Hoy rejected, which is exactly what Zeeto did. *Id*. ¶ 4. The parties are at impasse. No further efforts to confer were required.

**B.     Mr. Hoy did not serve four "nearly identical" subpoenas.**

Zeeto's suggestion that Mr. Hoy served multiple, substantively identical subpoenas is false. On September 7, 2021, while Health IQ's request for bifurcation was pending, Plaintiff served a subpoena seeking documents relating to Mr. Hoy and his telephone number. ECF No. 8-1 at 4–9 (Gillick Decl., Ex. 1). On September 20, 2021, despite the limited scope of the subpoena, Zeeto's served objections and refused to produce any documents. ECF No. 8-1 at 10–18 (Gillick Decl., Ex. 2). Zeeto did not move to quash or for a protective order.

After the Court denied Health IQ's request for bifurcation, Mr. Hoy asked Zeeto's outside counsel to accept service of a deposition subpoena. Counsel

responded that he would accept service and "determine the correct employee to produce." Supp. Paronich Decl., Ex. 8 at 77.

On November 29, 2022, Mr. Hoy sent Zeeto the deposition topics to allow Zeeto to identify a deponent and provide availability in advance of service. Zeeto's claim that Mr. Hoy attempted to pass off the topics as a subpoena is a fabrication. *Id*. at 74–75 ("I was working with you to coordinate a date before sending the formal subpoena over, which is why I sent the Schedule A so you could know what witness or witnesses you would need to produce in order to work on scheduling."). On December 8, 2021, after reviewing the topics, Zeeto conveyed that it felt a deposition on any topic was improper and that Mr. Hoy should serve the subpoena and set a reasonable date so that Zeeto could object. *Id*. at 74–75.

Mr. Hoy served the subpoena on December 9 and set the deposition for December 23, 2021. ECF No. 8-1 at 33 (Gillick Decl., Ex. 6). Zeeto objected on December 20, 2021, and refused to produce documents or a corporate witness. *Id*. at 44–57 (Gillick Decl., Ex. 7)

On January 9, 2021, Mr. Hoy served the subpoena at issue in this enforcement action. The subpoena seeks both documents and a deposition relating to class members whose leads originated on Zeeto's website. Zeeto again refused to produce any documents or a corporate witness.

**C.  Zeeto's post-motion production is deficient on its face and does not moot any part of Mr. Hoy's subpoena.**

Zeeto's production consists of twenty-six lead verification reports from

1 | Lead Intelligence, Inc. dba Jornaya, a third party company that ostensibly tracks
2 | "the origin and history of a lead event." *See* ECF No. 8-1 at 83 (Gillick Decl., Ex.
3 | 11). Zeeto argues that these reports purportedly prove that proposed class
4 | members "opted in to have their information shared with . . . *Policyscout*," ECF
5 | No. 8 at 2 (emphasis added). Zeeto notably does not say that proposed class
6 | members opted in to be called by Health IQ. ECF No. 8 at 2. Mr. Cardwell's
7 | declaration takes a different position, claiming—incorrectly—that the 26 Jornaya
8 | reports confirm that "each and every consumer" consented to be called by Health
9 | IQ. But the reports don't even establish that the consumers for whom the reports
10 | were generated provided such consent. And they have nothing to say about the
11 | alleged consent provided by any of the more than 244,000 other leads that
12 | originated on Zeeto's websites.

      Mr. Cardwell's declaration is deeply flawed. **First**, while Mr. Cardwell claims that he randomly selected 26 different consumers as a sample, the list of leads that were "randomly" selected includes multiple duplicates. *See* ECF No. 8-1 at 81 (Gillick Decl., Ex. 11). **Second**, the Jornaya report that Mr. Cardwell claims establishes Mr. Hoy provided consent includes completely different consent language than the lead produced by Enfuego. *Compare* ECF No. 8-1 at 186 (Gillick Decl., Ex. 11) *with* ECF No. 1-7 at 2 (Paronich Decl., Ex 4). Mr. Cardwell's cursory explanation of how Jornaya's "tool" is "integrate[d]" in its "survey path" provides no information that would explain this mismatch. ECF No. 8-1 at 80 (Gillick Decl., Ex. 11) ¶ 5.

      **Third**, Mr. Cardwell's statement that he reviewed the videos, clicked on the

marketing partners link for each, and verified that Health IQ was disclosed appears to be false. Twenty-one of the twenty-six Jornaya report "videos" Zeeto produced *do not* have an accessible marketing partners list that includes Health IQ. The link to the video in one Jornaya report leads to an error message, so the video could not be reviewed. Declaration of Jodi Nuss Schexnaydre ¶¶ 5–6. Sixteen videos do not have a marketing partners link in the TCPA consent language at all. *Id*. ¶ 7, Exs. 2–17. Two videos ended before the TCPA consent language was presented to the consumer. *Id*. ¶ 8. And two videos included links to an marketing partners list, but gave an error code when the link was clicked. *Id*. ¶ 9.

**Fourth**, for the 5 recordings with links to a marketing partners list that includes Health IQ, it appears that one or more of the linked lists were modified to add Health IQ after the January 9 subpoena was served. In late January 2022, Mr. Hoy captured screenshots of the marketing partner links for many of Zeeto's websites. *Id*. ¶ 11. All of the links Mr. Hoy captured in late January linked to a marketing partners list that did not include Health IQ. *Id*. ¶ 18. Yet, at least one the Jornaya videos that originate from links Mr. Hoy captured now includes Health IQ as a partner. *Id*. ¶¶ 12–17; *compare id*., Ex. 21 *with* Ex. 24; and Ex. 22 *with* Ex. 23. If Zeeto's "coding logs" establish that Health IQ was never removed from the marketing partner list as Mr. Cardwell testifies, ECF No. 8-1 at 79 (Gillick Decl., Ex. 11) ¶ 10, the most logical explanation for the discrepancy is that Health IQ was added to the list *after* the screenshots were taken. Notably, Mr. Cardwell's declaration does not identify when Health IQ was added to the list.

Mr. Hoy's motion is anything but moot. Zeeto ignores that the subpoena requires it to appear for deposition, an obligation documents cannot fulfill. And Zeeto's deficient production raises many more questions than it answers. At best, Mr. Cardwell's declaration is misleading. There is nothing in the Jornaya reports to support Zeeto's position that "each and every consumer" saw Health IQ listed as a marketing partner. Mr. Cardwell's declaration underscores the need for a full production and a comprehensive corporate deposition to explore Zeeto's lead generation processes.

### D.  Zeeto has not established undue burden and its confidentiality objections should be overruled.

Zeeto complains that "[n]o effort has been made to explain how this is not a burdensome production." ECF No. 8 at 8. But it is Zeeto's burden to "specifically show how each request for production is . . . overbroad, burdensome or oppressive." *Katz v. Shell Energy N. Am. (US), LP*, --- F.Supp.3d ---, 2021 WL 4477626, at *2 (D. Mass. Sept. 30, 2021) (granting motion to enforce subpoena). Zeeto's conclusory allegations that responding would be "burdensome" and take "hundreds of man hours" do not satisfy that burden. *See Scientific Games Corp. v. AGS LLC,* 2017 WL 3013251, at *2 (D. Nev. Jul. 13, 2017) (explaining that "[c]onclusory or speculative statements of harm, inconvenience, or expense are plainly insufficient" to satisfy the objecting party's burden of persuasion when responding to a subpoena.).

Moreover, Zeeto has consistently refused to provide any explanation of what information it has that might be responsive, much less how it could be

produced. As a prime example, Mr. Cardwell's declaration describes "coding logs" that are clearly relevant and responsive to the subpoena, but were never identified. Zeeto has simply refused to engage in any meaningful discussion about how to efficiently produce the information Mr. Hoy needs. It cannot now complain that Mr. Hoy failed to take reasonable steps to avoid undue burden by seeking a complete response. Zeeto has a significant relationship to a class action with billions of dollars in controversy. it cannot simply refuse to respond to a valid subpoena. *Apple, Inc. v. Samsung Elecs. Co. Ltd.*, 2013 WL 1942163, at *3 (N.D. Cal. May 9, 2013) ("Third-party status does not confer a right to obfuscation or obstinacy.").

Zeeto's confidentiality objections fair no better. The protective order in the underlying litigation explicitly protects information produced by non-parties. There is simply no basis to withhold documents on confidentiality grounds. The court should overrule Zeeto's conclusory objections. *See Hancock v. Credit Pros Int'l Corp.*, 2021 WL 2948154, at *8–11 (D.N.J. Jul. 13, 2021) (explaining that courts "routinely overrule" confidentiality objections when protective orders are in place).

**E.     In the alternative, transfer is appropriate.**

Rather than address Mr. Hoy's argument that exceptional circumstances exist, Zeeto argues that transfer would improperly give Mr. Hoy a second bite at the apple. This argument ignores the substance of Mr. Hoy's request. Mr. Hoy asks that the Court allow Judge Gonzalez Rogers to rule on appropriate scope of the subpoena if the Court intends to meaningfully limit Mr. Hoy's access to

discovery. Allowing Judge Gonzalez Rodgers to rule on how, if at all, the subpoena should be narrowed will promote the "uniformity of discovery rulings . . . critical to achieving fairness" for both parties and non-parties in complex litigation. *Chinitz v. Intero Real Estate Servs.*, 2020 WL 806177, at *2 (W.D. Tex. Feb. 14, 2020).

### III. CONCLUSION

For the foregoing reasons, Mr. Hoy respectfully asks the Court to grant his motion to compel and order Zeeto to produce responsive documents and testify at a remote deposition.

RESPECTFULLY SUBMITTED AND DATED this 21st day of March, 2022.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/ Beth E. Terrell, CSB #178181
    Beth E. Terrell, CSB #178181
    Email: bterrell@terrellmarshall.com
    Jennifer Rust Murray, *Pro Hac Vice Forthcoming*
    Email: jmurray@terrellmarshall.com
    936 North 34th Street, Suite 300
    Seattle, Washington 98103
    Telephone: (206) 816-6603

    Anthony I. Paronich, *Pro Hac Vice Forthcoming*
    Email: anthony@paronichlaw.com
    PARONICH LAW, P.C.
    350 Lincoln Street, Suite 2400
    Hingham, MA 02043
    Telephone: (617) 485-0018
    Facsimile: (508) 318-8100

*Attorneys for Petitioner*

## CERTIFICATE OF SERVICE

I, Beth E. Terrell, hereby certify that on March 21, 2022, I caused true and correct copies of the foregoing to be served via CM/ECF notification upon the following:

Paul A. Rosenthal (State Bar No. 338994)
KELLEY DRYE & WARREN LLP
One Jefferson Road, 2nd Floor
Parsippany, NJ 07054
Telephone: (973) 503-5943
Facsimile: (973) 503-5950
Email: paulrosenthal@kelleydrye.com

*Attorneys for Hi.Q, Inc. d/b/a Health IQ*

DATED this 21st day of March, 2022.

By: /s/ Beth E. Terrell, CSB #178181
Beth E. Terrell, CSB #178181

REPLY IN SUPPORT OF PETITIONER'S MOTION TO COMPEL COMPLIANCE WITH OUT-OF-DISTRICT SUBPOENA TO NON-PARTY ZEETOGROUP, LLC - 11